UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| ANDRES C. HERNANDEZ, | Case No. 2:20-cv-01006-DJC-JDP (PC) |
|---|---|
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATION |
| RICHARD WEISS, | |
| Defendant. | ECF No. 47 |

Plaintiff is a former state prisoner proceeding without counsel in this civil rights action brought under 42 U.S.C. § 1983. He alleges that defendant Richard Weiss, a physician at Mule Creek State Prison ("MCSP"), violated his Eighth Amendment rights by failing to adequately treat his systemic lupus erythematosus ("lupus") and related deep vein thrombosis ("DVT" or blood clot), resulting in a "cardiac event."[1] ECF No. 1. Defendant moves for summary judgment, arguing that plaintiff cannot show deliberate indifference. ECF No. 47. In the

---

[1] The underlying basis of plaintiff's claim is hard to pin down. In the complaint, he alleges that defendant ignored or failed to treat his lupus and DVT for years, resulting in pain and multiple complications. *See* ECF No. 1 at 7-8. At his deposition, he stated that the basis of his lawsuit is defendant's conduct in November 2019, a one-month period. *See* ECF No. 47-4 at 15:17-24. In his opposition to defendant's motion for summary judgment, he states that Dr. Weiss's liability stems from "the care leading up to plaintiff's cardiac event"; the date and other specifics of this cardiac event are not provided. ECF No. 49 at 2. The care at issue apparently includes a failure to timely refer plaintiff to a hematologist for the DVT and to refer him to a cardiologist immediately following his arrival at MCSP. ECF No. 49 at 2-3.

1

1  alternative, defendant argues that he is entitled to qualified immunity. After consideration of the
2  parties' arguments and evidence, I recommend that summary judgment be granted in favor of
3  defendant.

## Undisputed Facts[2]

### A. Background

Plaintiff suffers from lupus, a chronic autoimmune disease that can affect many parts of the body. Decl. of Richard Weiss in Supp. Mot. Summ. J. (ECF No. 47-5) ¶ 4. While there is no cure for lupus, people with the disease may experience periods of illness (flares) and periods of wellness (remission). *Id.* While incarcerated, plaintiff had been under the care of Dr. Quang Vo, a rheumatologist who specializes in treating patients with lupus. *Id.* ¶ 5. In January 2017, Dr. Vo found "[n]o identifiable objective evidence of active [lupus]," meaning that plaintiff's lupus was in remission. *Id.*, Ex. A (ECF No. 47-5 at 11).

### B. Treatment at MCSP

Plaintiff was transferred to MCSP in April 2017. Pl.'s Dep. at 18:17-20. Upon arrival, non-party Dr. Ashby conducted an intake appointment, noting that an August 2016 brain MRI was unremarkable and a May 2016 echocardiogram ("EKG") was normal. Weiss Decl., Ex. A (ECF No. 47-5 at 11).

Dr. Weiss was assigned as plaintiff's primary care physician from May 2017 through April 2020. Weiss Decl. ¶¶ 3. Plaintiff's medical records reveal frequent appointments with Dr. Weiss and other MCSP medical personnel, as well as outside specialists, for issues ranging from low heart rate to body stiffness. *See generally* Weiss Decl., Exs. A-D.

#### a. Treatment in 2017

Plaintiff first met with Dr. Weiss on June 1, 2017. Weiss Decl. ¶ 6, Ex. A (ECF No. 47-5 at 10). Dr. Weiss examined plaintiff and found that his heart and lungs were functioning

---

[2] Plaintiff attaches several medical records to his opposition, most of which are duplicative of records submitted by defendant, and one of which predates plaintiff's transfer to MCSP by nine months. *See* ECF No. 49 at 9-38. Plaintiff states that he is still attempting to retrieve certain medical records to oppose summary judgment. *See* ECF No. 49 at 5. However, discovery closed in October 2022, ECF No. 46, and plaintiff does not explain why he could not retrieve the documents or file a motion to modify that deadline.

1  normally. *Id.*

2  Plaintiff next met with Dr. Vo on July 14, 2017. *See* Weiss Decl. ¶ 7, Ex. A (ECF No. 47-5 at 9). Dr. Vo determined that plaintiff's lupus was in remission and that his lab results were within normal limits. *Id.*, Ex. A (ECF No. 47-5 at 9). At a follow-up appointment ten days later, Dr. Weiss noted that plaintiff was in no acute distress and had no cardiac problems or complaints. *Id.*; Weiss Decl. ¶ 7.

At a November 13, 2017 appointment, Dr. Weiss saw plaintiff for complaints of chronic gastritis; he did not observe any signs that plaintiff's lupus had flared. Weiss Decl. ¶ 8, Ex. B (ECF No. 47-5 at 70-71).

### b. Treatment in 2018

On January 23, 2018, plaintiff complained of rash, puffiness to arms, muscle pain, and frequent urination related to lupus. Weiss Decl. ¶ 9, Ex. B (ECF No. 47-5 at 70). Although Dr. Weiss did not observe any rashes, joint swelling, or other physical signs of DVT, he ordered labs and a follow-up appointment with Dr. Vo. *Id.*

On April 12, 2018, plaintiff complained of burning in his throat and stomach, pale skin, and stool abnormalities, but reported no significant changes in his digestion, bowel habits, urine system, heart rate or rhythm, or symptoms of chest pain. Weiss Decl. ¶ 11, Ex. B (ECF No. 47-5 at 66-69). Dr. Weiss noted that plaintiff's lupus was in remission and that he had no symptoms while taking medication. *Id.*, Ex. B (ECF No. 47-5 at 66).

On April 18, 2018, plaintiff had a follow-up appointment with Dr. Vo. Weiss Decl., Ex. D (ECF No. 47-5 at 87). Plaintiff complained of morning stiffness, soreness, and fatigue but was reluctant to take additional medication for lupus. *Id.* Dr. Vo reviewed the lab results, which were "essentially benign," but concluded that there was "mild disease activity." *Id.* He recommended that plaintiff start Plaquenil (hydroxychloroquine) for treatment of joint pain and stiffness. *Id.*

On May 2, 2018, plaintiff complained to a nurse of body stiffness and joint pain, but there were no complaints of heart or chest pain, his breathing was clear, and his heartbeat and rhythm were regular. Weiss Decl., Ex. B (ECF No. 47-5 at 64-65). The nurse noted that plaintiff was to begin taking hydroxychloroquine for the stiffness, per Dr. Vo's recommendation. *Id.*

1      On May 22, 2018, plaintiff met with Dr. Weiss after a colonoscopy.  Weiss Decl., Ex. B
2  (ECF No. 47-5 at 62-63).  Plaintiff stated that he was doing well but that he felt confused and
3  lightheaded when he sat or stood quickly.  *Id.*  Dr. Weiss advised him to consume "plenty [of] salt
4  and fluid" and to submit a health request form if the issue did not resolve.  *Id.*

5      On May 25, 2018, plaintiff complained of bradycardia (a heart rate slower than 60 beats
6  per minute) and dizziness.  Weiss Decl. ¶ 28, Ex. B (ECF No. 47-5 at 62).  Following a physical
7  examination, Dr. Weiss ordered plaintiff transferred to the emergency room at the San Joaquin
8  General Hospital ("SJGH") to rule out a heart problem or stroke.  Weiss Decl. ¶ 15, Ex. B (ECF
9  No. 47-5 at 62).  Plaintiff was admitted that day with complaints of headaches, dizziness, and
10 numbness on the left side of his face.  Opp'n, Ex. (ECF No. 49 at 12,).  A CT scan of the head did
11 not show any acute abnormalities, but the examining doctor, Dr. Kinnari Parikh, could not rule
12 out a stroke.  *Id.*  Dr. Parikh ordered various tests, to include a bilateral carotid ultrasound, an
13 MRI, and an EKG.  *Id.*  After reviewing the test results, Dr. Parikh noted that the MRI results
14 were unremarkable, plaintiff was "primarily asymptomatic" as to bradycardia, and there was
15 "[n]o evidence of cardiomyopathy on chest imaging."  *Id.* (ECF No. 49 at 15).  Dr. Parikh also
16 noted that the hydroxychloroquine that Dr. Vo had ordered "may cause bradycardia by affecting
17 S-A node."  Opp'n, Ex. (ECF No. 49 at 15).

18     Following plaintiff's return from SJGH, Dr. Weiss found plaintiff to be "in usual state of
19 health and functional ability," noted that he had not suffered a stroke, and further noted that he
20 was not suffering from lupus cerebritis.  Weiss Decl. ¶ 17, Ex. B (ECF No. 47-5 at 58-60).  Still,
21 Dr. Weiss ordered a heart rhythm study via a Holter monitor by a cardiologist, who later found
22 that plaintiff's heart was functioning within normal limits and saw no evidence of an arrhythmia.
23 Weiss Decl. ¶ 18, Ex. B (ECF No. 47-5 at 60).

24     At a June 26, 2018 appointment, plaintiff complained of dizziness, headache, and chest
25 pain.  Weiss Decl., Ex. B (ECF No. 47-5 at 57-58).  Dr. Weiss referred plaintiff to a cardiologist
26 for a cardiac evaluation and noted that Dr. Vo did not believe plaintiff's chest pain to be related to
27 lupus.  *Id.*

28     On July 10, 2018, Dr. Weiss saw plaintiff for a racing heart, dizziness, and numbness in

4

both arms. Weiss Decl., Ex. B (ECF No. 47-5 at 55-56). Because the results of the examination were primarily normal, Dr. Weiss considered that plaintiff's issues may have an anxiety and somatization component. *Id.* Plaintiff met with Dr. Weiss again on July 25, 2018, with similar complaints of a rapid heart rate, dizziness, and muscle weakness. *Id.*, Ex. B (ECF No. 47-5 at 53-55). Dr. Weiss scheduled a follow-up appointment pending results from the Holter monitor, which, as noted above, showed that plaintiff's heart was functioning normally. *Id.*

At an August 17, 2018 appointment with another MCSP physician, plaintiff had a regular heart rate and clear lungs, leading the examining physician to believe that plaintiff's heart palpitations were due to anxiety or high blood pressure. Weiss Decl., Ex. B (ECF No. 47-5 at 53).

On August 28, 2018, plaintiff was seen by Dr. Vo. Weiss Decl. ¶ 19, Ex. D (ECF No. 47-5 at 85-86). Finding no "significant evidence of lupus flare or significant disease activity," Dr. Vo noted the possibility that plaintiff was a hypochondriac. *Id.* Nonetheless, he recommended that plaintiff continue taking hydroxychloroquine. *Id.*

Dr. Weiss observed that plaintiff was "in no apparent distress" at a September 5, 2018 appointment and wrote that he would follow Dr. Vo's recommendation to continue with hydroxychloroquine. Weiss Decl., Ex. B (ECF No. 47-5 at 50-51). After this visit, plaintiff was seen four more times by MCSP medical personnel in September 2018, with Dr. Weiss ultimately recommending that he speak with a mental health provider because there may be a psychosomatic factor to his symptoms. *See id.* (ECF No. 47-5 at 45-50).

**c. Treatment in 2019**

On January 29 and 30, 2019, plaintiff complained of a sore throat, myalgias, and fever with some chills; and on February 27, 2019, he complained of abdominal pain. Weiss Decl., Ex. B (ECF No. 47-5 at 42-44).

On March 5, 2019, plaintiff met with Dr. Vo, who found no evidence of a "significant" lupus flare and recommended that plaintiff continue with hydroxychloroquine. Weiss Decl. ¶ 21, Ex. D (ECF No. 47-5 at 83-84). Dr. Vo again found plaintiff to be "somewhat hypochondriac and needed repeated redirection." *Id.*, Ex. D (ECF No. 47-5 at 83).

At a follow-up appointment with Dr. Weiss on March 15, 2019, plaintiff complained of abdominal pain and reported that he felt pins and needles in his forearms, hands, feet, and lower calves. *Id.*, Ex. B (ECF No. 47-5 at 38-41). After examining plaintiff and finding him to be in "no apparent distress," Dr. Weiss indicated that he would "continue co-management" with Dr. Vo. *Id.*

Plaintiff was seen by MCSP medical staff, including Dr. Weiss, six times in May 2019. *See* Weiss Decl., Ex. B (ECF No. 47-5 at 31-36). Plaintiff's primary complaints were an abscess on his left knee and gastrointestinal issues. *See id.* But on May 13, he claimed that he often had brief lupus flares that resolved after he put in a health care request. *Id.* (ECF No. 47-5 at 37). Dr. Weiss found this unlikely as "[n]o recent rheumatologist visit in past 3 years supports [lupus] being active / have a flare at the time seen." *Id.*

Dr. Weiss saw plaintiff four times in June 2019, primarily for bradycardia. Weiss Decl. ¶ 22, Ex. B (ECF No. 47-5 at 27-31). Dr. Weiss ordered another heart rhythm study, which was conducted in July 2019 and which again showed a normally functioning heart with no evidence of an arrhythmia. Weiss Decl. ¶ 22. In July and August 2019, plaintiff's primary complaint related to a fractured finger. *See* Weiss Decl., Ex. B (ECF No. 47-5 at 17-26).

### d. Treatment in November 2019

On October 31, 2019, plaintiff submitted a request for medical services, concerned that he had a DVT in his calves. *See* Weiss Decl., Ex. B (ECF No. 47-5 at 16). Dr. Weiss examined him the following day and found him to be breathing normally and in no apparent distress. Weiss Decl. ¶ 25. Dr. Weiss also conducted a Homan's test, which is a standard test to assess the possibility of a DVT. *Id.* Because the test was negative, Dr. Weiss directed plaintiff to seek medical help if his condition worsened or if he experienced new symptoms. *Id.*

On Sunday, November 17, 2019, plaintiff went to MCSP's triage and treatment area complaining of chest pain. Weiss Decl. ¶ 26, Exs. B-C (ECF No. 47-5 at 13, 73-79). The MCSP on-call physician, Dr. Snook, referred plaintiff to the SJGH emergency room where an EKG showed a low risk for an adverse cardiac event. Weiss Decl. ¶¶ 26-27. A chest x-ray revealed no abnormalities, and there were no findings of a pulmonary embolism or pneumothorax. Weiss

1  Decl., Ex. C (ECF No. 47-5 at 73-79).  The emergency room physician did find bradycardia but
2  determined that hospitalization was unnecessary.  Weiss Decl. ¶ 28.  The physician discussed
3  plaintiff's condition with Dr. Snook, who agreed to transfer plaintiff back to MCSP.  Weiss Decl.
4  ¶ 29.  Plaintiff was stable when discharged from SJGH.  *Id.*

5  On November 19, 2019, plaintiff returned to Dr. Vo, who noted that "it does not look like
6  we have made any progress in any direction" since the March 2019 appointment.  Weiss Decl.,
7  Ex. D (ECF No. 47-5 at 81-82).  After reviewing plaintiff's medical records, Dr. Vo did not find
8  an "obvious [lupus] flare while not on any immunosuppressant" and concluded that "I am not
9  sure if I can provide any more assistance in the management of this patient. . . . I think we can
10 continue with observant management from a lupus standpoint at this time."  *Id.* (ECF No. 47-5 at
11 82).

12 Also on November 19, 2019, Dr. Weiss saw plaintiff for a follow-up appointment.  Weiss
13 Decl. ¶ 30, Ex. B (ECF No. 47-5 at 13-15).  After examining plaintiff, Dr. Weiss determined that
14 plaintiff's chest pain was likely caused by the chest wall, not his heart.  *Id.*  This determination
15 was based on plaintiff not having any cardiac problems in 2017, 2018, or 2019; he had not
16 suffered any heart attacks; and two heart studies showed no abnormalities.  Weiss Decl. ¶ 31.  Dr.
17 Weiss also relied on Dr. Vo's conclusion that plaintiff's lupus was in remission in 2017, 2018,
18 and 2019.  Weiss Decl. ¶ 31, Ex. D.

### Legal Standards

**A.     Summary Judgment Standard**

21 Summary judgment is appropriate where there is "no genuine dispute as to any material
22 fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Washington*
23 *Mutual Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011).  An issue of fact is genuine
24 only if there is sufficient evidence for a reasonable factfinder to find for the non-moving party,
25 while a fact is material if it "might affect the outcome of the suit under the governing law."
26 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.*, 818
27 F.2d 1422, 1436 (9th Cir. 1987).

Each party's position must be supported by (1) citations to particular portions of materials in the record, including but not limited to portions of depositions, documents, declarations, or discovery; or (2) argument showing that the materials cited do not establish the presence or absence of a genuine factual dispute or that the opposing party cannot produce admissible evidence to support its position. *See* Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The court may consider material in the record beyond that cited by the parties, but it is not required to do so. *See* Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *see also Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010). Given the liberal standard afforded pro se litigants and the prohibition against granting summary judgment by default, I will take the whole record into consideration in evaluating whether defendants are entitled to summary judgement.

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party meets this initial burden, the burden shifts to the non-moving party "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (citing *Celotex Corp.*, 477 U.S. at 323). While the non-moving party is not required to establish a material issue of fact conclusively in its favor, it must at least produce "evidence from which a jury could reasonably render a verdict in [its] favor." *Id.* (citing *Anderson*, 477 U.S. at 252). The evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the non-moving party. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002).

**B.  Eighth Amendment Standard**

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091,

8

1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  The two-prong test for deliberate indifference requires a plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent."  *Jett*, 439 F.3d at 1096 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992)).  "This second prong—defendant's response to the need was deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference."  *Id.* (citing *McGuckin*, 974 F.2d at 1060).  Indifference may be manifest "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care."  *Id.*  When a prisoner alleges a delay in receiving medical treatment, the delay must have led to further harm for the prisoner to make a claim of deliberate indifference to serious medical needs.  *See McGuckin*, 974 F.2d at 1060 (citing *Shapely v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard."  *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).  "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'"  *Id.* at 1057 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  "If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk."  *Id.* (quoting *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002)).  "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment."  *Id.* at 1060.  "[E]ven gross negligence is insufficient to establish a constitutional violation."  *Id.* (citing *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990)).  Additionally, a difference of opinion between an inmate and prison medical personnel about a medical diagnosis or course of

treatment is insufficient to support a deliberate indifference claim. *See Toguchi*, 391 F.3d at 1058; *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012.

## Discussion

A reasonable juror could conclude that plaintiff's lupus and DVT constitute an objectively "serious medical need." *See McGuckin*, 974 F.2d at 1059. The dispute here centers on the "second prong—[whether] defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096.

Plaintiff contends that Dr. Weiss failed to properly treat his lupus and DVT, failed to refer him to a hematologist and a cardiologist in or around 2017 following his transfer to MCSP, and delayed sending him to the hospital despite his medical history and complaints of chest pain. *See* ECF No. 49 at 2. The result of this allegedly constitutionally deficient care, according to plaintiff, is that he suffered a blood clot and a cardiac event. *Id.*

Defendant argues that the undisputed evidence shows that he "examined and assessed Plaintiff on numerous occasions, including two referrals to a cardiologist for heart rhythm studies, in response to Plaintiff's medical condition and complaints." ECF No. 47-1 at 12. In addition, defendant referred plaintiff to Dr. Vo, a specialist in rheumatology, multiple times and followed his recommendation to take hydroxychloroquine. Defendant points out that there is no evidence in the record that plaintiff suffered either a blood clot or a cardiac event in November 2019 or that he should have been referred to a hematologist or a cardiologist in or around 2017. In any event, defendant referred plaintiff to a cardiologist for a heart rhythm study in May 2018 and again in June 2019, with the results showing no heart abnormalities and no evidence of a DVT. ECF No. 47-1 at 13. As for plaintiff's complaints in November 2019, defendant examined plaintiff but found no evidence of distress, no swelling in plaintiff's calves, and no edema or skin changes. He conducted a Homan's test to rule out a DVT, and the test was negative. Thus, he contends, the record shows "nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another." *Wilhelm*, 680 F.3d at 1122; *see* ECF No. 47-1.

The record shows that defendant Dr. Weiss exercised acceptable medical judgment in treating plaintiff's complaints. He repeatedly examined plaintiff but found his complaints to be

inconsistent with the results of tests performed at MCSP, he repeatedly referred plaintiff to a rheumatologist, he complied with the rheumatologist's recommendations, he ordered two heart rhythm studies, and he ordered plaintiff transferred to SJGH in May 2018, where plaintiff's test results were again normal.

Plaintiff counters that defendant knew he suffered two heart attacks and a blood clot before he arrived at MCSP, as well as an "inferior infarction" on July 19, 2019, when Dr. Weiss was reportedly on vacation. ECF No. 49 at 3. Once more, though, plaintiff points to no documentation supporting either claim. Furthermore, assuming plaintiff did suffer an "inferior infarction" on July 19, he readily admits that Dr. Weiss did not treat him, since Dr. Weiss was on vacation.

Plaintiff's argument is, at its core, a difference of opinion with defendant, and as such is insufficient to establish deliberate indifference. A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish deliberate indifference. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Toguchi*, 391 F.3d at 1058. I will therefore recommend that defendant's motion for summary judgment be granted. I decline to reach defendant's alternative argument that he is entitled to qualified immunity.

**Conclusion**

Based on the foregoing, it is RECOMMENDED that defendant's motion for summary judgment, ECF No. 47, be granted, and that the Clerk of Court be directed to close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response shall be served and filed within fourteen days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.

11

1991).

IT IS SO ORDERED.

Dated: __July 28, 2023__  
                                        JEREMY D. PETERSON  
                                      UNITED STATES MAGISTRATE JUDGE